1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

AT SEATTLE

8

| | |
|---|---|
| ALAN H. JEFFRIES, a single person, and BENNIE JEFFRIES IV, a single person, | ) ) ) ) No. |
| Plaintiffs, | ) ) KING COUNTY SUPERIOR COURT ) CAUSE NO. 11-2-27089-1KNT |
| vs. | ) ) VERIFICATION OF STATE COURT |
| MICHAEL WATERS, an individual, and MICHAEL WATERS and JANE DOE WATERS, a marital community; and the CITY OF SEATTLE, a Washington municipal corporation, | ) RECORDS ) ) ) ) ) |
| Defendants. | ) ) ) |

9

10

11

12

13

14

15

16

**VERIFICATION**

17

The undersigned hereby declares the following:

18

1.      The undersigned is counsel for defendants City of Seattle, Michael Waters and

19

Jane Doe Waters.

20

2.      Pursuant to CR 101(b), attached are true and correct copies of all records and

21

proceedings in the Superior Court of King County, Washington, received by defendants in the

22

above-entitled action, Cause No. 11-2-27089-1KNT;

23

VERIFICATION OF STATE COURT RECORDS - 1

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

| Exhibit | Document |
|---------|----------|
| 1 | Plaintiff's Complaint; |
| 2 | Order Setting Civil Case Schedule |
| 3. | Case Information Cover Sheet and Case Assignment Designation; |
| 4. | Notice of Appearance; |
| 5. | King County Superior Court Docket, Cause No. 11-2-27089-1KNT. |

DATED this 30th day of August, 2011, at Seattle, Washington.

PETER S. HOLMES
Seattle City Attorney

By:     *s/Brian G. Maxey*
        *s/Dominique' L. Jinhong*
        Brian G. Maxey, WSBA #33279
        Dominique' L. Jinhong, WSBA #28293
        Seattle City Attorney
        600 4th Avenue, 4th floor
        P.O. Box 94769
        Seattle, WA 98124-4769
        Phone – Brian Maxey: 206-733-9001
        Phone – Dominique' Jinhong: 206-684-8251
        FAX:  206-684-8284
        Email:  brian.maxey@seattle.gov
                dominique.jinhong@seattle.gov


        Attorneys for Defendants
        City of Seattle, Officer Michael Waters
        and Jane Doe Waters

VERIFICATION OF STATE COURT RECORDS - 2

PETER S. HOLMES
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

EXHIBIT 1

FILED

11 AUG 08 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-27089-1 KNT

1

2

3

4

5

6

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

7

8   ALAN H. JEFFRIES, a single person, and )
    BENNIE JEFFRIES IV, a single person ) No.

9                                        )
                    Plaintiffs,          )

10                                       )
              vs.                        )   **COMPLAINT**

11                                       )
    MICHAEL WATERS, an individual, and   )

12  MICHAEL WATERS and JANE DOE          )
    WATERS, a marital community; and the )

13  CITY OF SEATTLE, a Washington municipal )
    corporation,                         )

14                                       )
                    Defendants.          )

15  _____

16

17  Comes now plaintiffs and through counsel allege as follows:

    ### PARTIES, JURISDICTION, VENUE

18
    1.     Plaintiffs Alan H. Jeffries and Bennie Jeffries are brothers; Alan Jeffries resides in

19  Pierce County, WA, and works as a marine clerk at the Port of Seattle, supervising longshoremen

20  operating the cranes; Bennie Jeffries resides in Seattle in King County Washington, and is a retired

21  longshoreman with cardio pulmonary obstructive disorder, who requires an air tank and nebulizer

22  for his safety.

23

COMPLAINT - 1

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

2.      Michael Waters is and at relevant times was a Seattle Police Department officer; on information and belief he resides in King County, Washington.

3.      The City of Seattle is a Washington municipal corporation doing business or residing in Seattle Washington; the Seattle Police Department (SPD) is a department of the City, and at relevant times employed Waters.

4.      Alan and Bennie Jeffries have duly given notices of claim and filed and served same on the City of Seattle and waited sixty days prior to filing suit, as required by statute

5.      Jurisdiction and venue are proper in this court because the torts sued on arose in King County and/or defendant corporation and/or Waters reside in King County, Washington.

## FACTS

6.      On August 22, 2009, at 8603 Dallas Road in Seattle, where Alan Jeffries kept his boats at the South Park Marina, officer Waters and other SPD officers intentionally, maliciously, recklessly and in bad faith falsely seized and arrested Alan Jeffries and Bennie Jeffries, assaulted them, committed battery upon them, intentionally inflicted severe emotional distress and humiliation on them, unlawfully tased and roughed up Alan Jeffries, and used excessive force on him, and unlawfully seized and deprived Bennie Jeffries of his airtank and nebulizer, putting his life in danger, violating the Fourth Amendment rights of the Jeffries and the First Amendment rights of Alan Jeffries; then Waters caused Alan Jeffries to be maliciously prosecuted, and Michael Waters did this based not on any lawful cause or objective circumstances but because prior to that time he formed animus and jealousy towards Alan Jeffries and desired to humiliate and abuse him.

7.      Waters had known Alan and Bennie Jeffries for several years prior to August 22, 2009.

COMPLAINT - 2

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

8. Prior to August 22, 2009, Waters was well acquainted with the persons and appearance of Alan Jeffries and Bennie Jeffries, and knew them socially.

9. Prior to August 2009, Waters knew Alan and Bennie Jeffries through:

(a) Waters twenty times had conversed with and had a beer or drink with Alan Jeffries. these interactions were at the Chelan Café, 3527 Chelan Avenue Southwest Seattle, WA 98106, a well known hangout of longshoremen, also frequented by Waters.

(b) Waters often spoke with Bennie Jeffries at Chelan's;

(c) Waters' conversations with Alan Jeffries were not passing but covered sports, football, work and Jeffries' interest in boats including the fact he kept and worked on boats at the Couth Park Marina, a location Waters knew, as it was within his SPD assignment and patrol area;

(d) Alan Jeffries and Michael Waters were often the only two African Americans at Chelan's, facilitating their acquaintance in the small bar area.

(e) Waters had arrested Alan Jeffries at an ARCO station in Seattle for a warrant alleging boating while intoxicated; Waters came up to Jeffries and suddenly told Jeffries he was being arrested; Jeffries said, "for what?" and Waters said "you got a warrant" then asked "should I call your brother [that is Bennie Jeffries] to come get your car keys?"

10. Waters knew both Alan and Bennie well before August 2009.

11. Prior to August 22, 2009, the following persons most of whom were longshoremen saw Michael Waters and Alan Jeffries together at Chelan's: Terry Hinch; Donald Hinch; Mike Nordeen; Chuck Alexander; Al; Monty Methvan; Frank Cappiello; John Fern; Chris Fowler; Bob Hammer; Ken Lawson; Anthony Lemon; Craig Martinez; Jeremy Ross; Norton; Berry Stonehocker; Dave Black; Mike and Alex Hoard; I.J.; Krash a/k/a John; Marcus Allen; Mark Bjornson; Ray Grife; Wes Montgomery; Carlos Gaston; Tommie; Gator; Roxy; Linda and Denise;

COMPLAINT - 3

1  the bartenders Shawna and Mandy; and Danny Acklund, who got in a fist fight with Waters at

2  Chelan's.

3          12.     Shortly prior to August 22, 2009, Waters' malice and animus to Alan Jeffries

4  deepened when he broke up with the Chelan's bartender, Shawna, and saw Alan Jeffries talk

5  with her and flirt with her.

6          13.     Waters then became more jealous of Alan Jeffries because Alan Jeffries had

7  backstage passes to a George Clinton concert and with Shawna organized a festive night out in

8  which Alan Jeffries provided the backstage passes, Shawna obtained a limousine and they left

9  from Chelan's with others and led the event; and Waters was excluded form and not invited to

10 this event.

11          14.     Waters had previously seen Alan Jeffries meet with or talk to several women with

12 whom he was in an apparent relationship or on a date with at the Chelan's bar.

13          15.     Jeffries frequently met his female companions there, as Chelan's was only about

14 100 feet from his workplace at the Port of Seattle, and it was convenient to meet women at the

15 bar just after he go off work.

16          16.     Waters knew of Jeffries reputation and social and dating success at Chelan's and

17 thought or believed that Alan Jeffries was in, or was about to be in, a relationship with Shawna,

18 and was otherwise jealous of Alan's amiable, sociable and friendly relations with Shawna.

19          17.     Waters was also jealous of Alan Jeffries because Alan Jeffries made much more

20 money, and bought others drinks frequently (including Waters) and was popular at the bar, while

21 Waters made less, could not buy everyone a drink, was not popular, being a police officer not really

22 part of the crowd at Chelans, and was excluded from many longshoremen and Chelans-related

23 social events like the George Clinton concert and limousine evening.

COMPLAINT - 4

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

18.     By the time he rousted Alan Jeffries on August 22, 2009 Waters developed a plan to humiliate and insult Alan Jeffries because he was jealous of Alan Jeffries and wanted to put him down.

19.     Prior to August 22, 2009, at morning briefings, Waters had repeatedly seen and studied the description and still shots from bank surveillance video of two armed bank robbers that King County and local law enforcement were searching for; everyone on patrol in SPD got the same bulletins and photos.

20.     When Waters saw the bulletins he did not claim the bank robbers resembled his acquaintances Alan Jeffries or Bennie Jeffries.

21.     In fact, there was not an objective reasonable resemblance between the bank robbers and Alan and/or Bennie Jeffries.

22.     Had they objectively resembled the bank robbers, or had Waters subjectively thought they did, procedure would have required Waters to speak up about that to a supervisor or detective and instigate an inquiry into the Jeffries' whereabouts at the times of the bank robberies or other investigation of them; this did not happen because Waters knew they did not resemble the bank robbers, knew they were not the bank robbers and they did not objectively resemble them either.

23.     At no time prior to August 22, 2009 did he claim that the bank robbers resembled Alan Jeffries or Bennie Jeffries.

24.     On August 22, 2009, in the evening  but in daylight, Bennie and Alan went in Alan's van to the South Park Marina, so Alan could work on his boats.

25.     Suddenly a SPD cruiser passed, hit its brake lights, and did a U turn to come back to the van.

COMPLAINT - 5

26.     At this time Alan was standing outside the van, between it and the fence near the yard gate; and Bennie was sitting in the parked van, and Alan's girlfriend at the time was out of the van and on one of the boats.

27.     The patrol car turned on its overhead lights, and pointed at the van, the speaker of the patrol car said "you behind the van, come out with hands up and walk towards the car, stop turn around and keep coming."

28.     At this time there was no probable cause nor objective reasonable basis for thinking there was any crime or basis for stopping or arresting the man by the van, which was Alan Jeffries.

29.     Waters and his partner got out and drew guns.

30.     The conduct of the patrol car, order and other circumstances were a stop and seizure of the Jeffries.

31.     There was no reasonable suspicion or probable cause justifying this stop or seizure or arrest.

32.     Waters later claimed he stopped and seized Jeffries because at the time he saw two men in the van, and he believed one or both resembled the bank robbers; there was no objective probable cause for this because one could not identify someone sitting in a van or behind or beside a van from that distance sufficiently to think they were the bank robbers; one could not see the body size and type of either Jeffries brother if Waters had in fact "identified" someone sitting in the van; and objectively the Jeffries do not resemble the photos of the bank robbers.

33.     There was no reasonably objective basis for Waters to stop or seize the Jeffries at that point in time.

34.     If Waters could see well enough to "make" someone in the van as a bank robber, he could see well enough to recognize his drinking acquaintance Alan Jeffries whom he had arrested

COMPLAINT - 6

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1  before; there were no special circumstances or lighting that somehow made Alan Jeffries not look

2  like Alan Jeffries.

3      35.    While Alan Jeffries was in sight about 20 or 25 feet from Waters, in day light, and

4  objectively recognizable to and recognized by Waters, Waters ordered him to get on the ground, and

5  Alan Jeffries spoke up, saying "for what?"

6      36.    Waters ordered Alan Jeffries to turn around and walk backwards; Alan Jeffries

7  complied then stumbled and informed Waters he could not walk backwards, and the girlfriend of

8  Alan Jeffries also then yelled to Waters "he's sick and can't walk backwards."

9      37.    Alan Jeffries then and now has Meuniere's disease affecting his balance.

10      38.    Waters said "he's not sick and can do as he's ordered."

11      39.    Jeffries looked at Waters from 12 feet and Waters suddenly tased him without

12  proper cause, unreasonably in the circumstances when there was no threat to safety and Jeffries was

13  attempting to comply with the order to walk backwards and had merely informed Waters he could

14  not walk backwards.

15      40.    This caused Alan Jeffries intense pain and humiliation; the taser hook felt like a

16  fishhook in his chest; this was illegal excessive force without any reasonable need for that level or

17  type of force.

18      41.    Alan Jeffries had had his hands up the entire time and made no sudden movement or

19  furtive movement and there was no reasonable basis to use force.

20      42.    Waters and his partner dragged Alan Jeffries roughly on the ground with excessive

21  force when under the circumstances there was no reasonable need for that level or duration of force.

22      43.    Alan Jeffries suffered pain from the taser and being roughly dragged on the round.

23

COMPLAINT - 7

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

44.     Waters cuffed Alan Jeffries and took him to a holding cell where in the presence of Michael Waters a sergeant said, "we thought you looked like a bank robber" and laughed.

45.     Waters then provided false and incomplete information on his arrest report and in dealing with city prosecutors.

46.     Waters failed to tell city prosecutors he had long known Alan and Bennie Jeffries, or had been given drinks by Alan, or had feelings of jealousy to him, or that he had arrested him before; or that he knew both Alan and Bennie Jeffries previously.

47.     Waters falsely wrote on his arrest report there was no video of the incident.

48.     In fact there was video of the incident, including video made by other units arriving when Alan Jeffries was on the ground, and since that night, Alan Jeffries has obtained such video.

49.     Waters caused Alan Jeffries to be maliciously prosecuted for obstruction of an officer when there was no probable cause to charge that crime, and did so based on malice, animus, desire to retaliate against Alan Jeffries for asserting his right to free speech in front of Waters, and desire to abuse him because of his race.

50.     Waters did not tell prosecutors that he had violated many procedures that would have applied had he truly thought he was apprehending suspected violent bank robbers.

51.     Proper procedure in that situation would be (A) to call a superior, to wait for other officers including those bearing rifles, shotguns and high caliber weapons to come to display insurmountable force, prior to approaching; (B) to not approach suspected violent felons in an exposed position, as Waters did when he walked up to the van and asked someone he supposed thought was a violent felon to come out from behind a van (a true violent felon could easily have shot Waters in this situation); (C) to not approach while the situation was stable and calm; (D) to not approach while there were only two officers armed with just handguns; (E) to close off the area (the

COMPLAINT - 8

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

1   marina is located in an area fairly easy to close off, being constrained by the Duwamish); (F) to call

2   in the plates on the van both to alert command in case the van took off, to get more officers there

3   before approaching and to learn who the owner was; and (G) to not let one of the allegedly

4   suspected armed bank robbers sit in a van while Waters interacted with Alan Jeffries first -- this

5   would have let a true armed violent felon take a shot at Waters or take off; (H) to not fail to check

6   out the van while Waters interacted with Alan Jeffries -- this would have potentially left any number

7   of armed confederates able to shoot at Waters or burst out of the van shooting at Waters.

8        52.    Such procedures were not followed by Waters.

9        53.    The objective facts did not reasonably indicate any basis for stopping these citizens

10   nor that there were there two violent armed bank robbers about.

11       54.    Subjectively Waters knew he was not approaching two suspected bank robbers -- he

12   knew was approaching his friends the Jeffries, in Bennie's van, at the marina Alan used.

13       55.    The fact the van was stopped in this location where it is not easy to exit the area also

14   indicated that the men were not the violent armed bank robbers being hunted down by hundreds of

15   law enforcement officers at the time.  Violent bank robbers are not known to stop in hard-to-escape

16   locations, nor work on boats that are up on stilts inside a fenced yard.

17       56.    Waters did not follow such procedures as Waters at all times or soon knew it was

18   Alan Jeffries and Bennie Jeffries with whom he was dealing, not the sought after bank robbers.

19       57.    Waters did not tell prosecutors the arrest lacked any proper basis or objective basis,

20   or was due to Waters' malice and animus to Jeffries.

21       58.    Alan Jeffries then was charged with obstruction, had to hire defense counsel and

22   spend money defending himself.

23

COMPLAINT - 9

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

59. Later the City dropped the charges and this was a termination favorable to Alan Jeffries.

60. Michael Waters did not show up at the final hearing when the charges were dropped.

61. Michael Waters did not show because the charge was false, and he would have to be cross examined including about his prior relationship with Alan Jeffries, and he knew the truth of the false arrest and his assaulting the Jeffries would come out.

62. When Waters failed to appear, he told counsel for the City he could not appear because he was scheduled for some other legal hearing at the same time.

63. This was false, and Waters caused the city attorney to incorrectly tell the court in Jeffries' case a falsehood.

64. While Alan Jeffries was tased and cuffed on August 22, 2009, Bennie Jeffries stayed in the van driver's seat, which was on the side of the van towards the road, not the side to the fence.

65. Bennie in the driver's seat was always more visible than Alan in the passenger seat (alleged by Waters) or outside the van (in fact) because any passing vehicle such as the passing SPD patrol car would be closer to Bennie than Alan and for part of the time Bennie would block the view of Alan.

66. Michael Waters arrested and seized Bennie Jeffries with the show of force when the patrol car commanded Alan to come out from behind the van and the officer had their guns drawn.

67. There was no probable cause nor reasonable objective basis for this seizure of Bennie Jeffries.

68. After Alan was taken away, Waters ordered Bennie out of the van and put him in cuffs.

COMPLAINT - 10

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

69.  This was excessive force; there was no basis to arrest or restrain Jeffries; there was no sign this elderly gentleman with COPD and known to Waters was a threat nor that he had committed any crime; this seizure and use of force was unlawful.

70.  Officers then searched the van.

71.  This was an illegal search as there was no basis to think there was evidence of any crime therein at that time.

72.  By this time Waters knew there was no bank robber present; he had taken Alan in for obstruction; and there was no evidence of obstruction inside the van; and he had no basis to think there was evidence of any other crime in the van.

73.  Waters said to Bennie, "why didn't you say it was you?"  Waters had in fact recognized Bennie and Alan prior to that time.

74.  Waters had the officers hold Bennie Jeffries there for about 1.5 hours, which was illegal in duration as there was long no cause for any seizure or stop or arrest of Bennie.

75.  A tow truck came and took the van away; there was no basis for this search or seizure of property as there was no evidence the van belonged to Alan.

76.  The van contained Bennie Jeffries' air tank and nebulizer that he needed to deal with his cardio obstructive pulmonary disease.

77.  Before the van was taken away, Bennie asked Waters and the other officers to get his air tank and bag nebulizer.

78.  They refused.

79.  This was an unlawful act of putting Bennie's life in danger.  Waters and the officers knew he had COPD, the air tank and nebulizer were apparent in the van.

80.  Waters and the officers intentionally put fear of death into Bennie Jeffries.

COMPLAINT - 11

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

81.     Without his air tank and nebulizer, he could have died; and worse, he knew that the officers knew that, and they did.

82.     As a result of the foregoing acts, Alan and Bennie Jeffries were injured, and suffered economic loss, deprivation of property, or use of property, humiliation, insult, indignity and severe and extreme panic and emotional distress, and ongoing emotional and mental distress in an amount to be proven at trial.

83.     Jeffries had not obstructed an officer but had merely spoken up, telling him he could not walk backwards and asking him why he was stopping him.

84.     In addition to the personal malice, Waters retaliated against Alan Jeffries merely because he spoke up and talked back to Waters, even though such speech and petition is within the rights guaranteed to Alan Jeffries in the First Amendment, and due to the race of the Jeffries as African Americans.

85.     The acts to the Jeffries that night were due to policy and custom of Seattle SPD or other acts of SPD leaders that intentionally or recklessly allowed and encouraged officers to abuse their power to arrest citizens for obstruction of an officer then hide or conceal or not take video of the encounter, then falsify or conceal evidence to hide officer misconduct.

86.     Well prior to August 22, 2009 SPD told the public it was installing the in car video to assure officer integrity.

87.     Prior to August 2009, Waters received video training from SPD.

88.     At the time, regulations and the training required Waters to capture his encounter with the Jeffries on his in car video camera.  There was no crime-in-action or hot pursuit situation that would have excused Waters from getting video.

COMPLAINT - 12

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

89.   Regulations also required Waters to annotate on his arrest report that video was taken.

90.   Waters turned on his overhead lights prior to the encounter, activating the mechanism in the video system in his car that made the system retain the video data that was being continuously recorded by the system.

91.   At some point that night or later, in or after his interaction with Alan Jeffries on August 22, 2009, Michael Waters caused the video that was at first being continuously recorded to be lost, not retained, not uploaded at the station, removed from the system or eliminated or concealed.

92.   This was to prevent the video and audio record from coming to light, to hide Waters' illegal acts, including his conversation with his partner just prior to getting out of the car.

93.   Waters' partner also knew that proper procedure would not allow them to try to bring down two violent bank felons without a massive amount of better armed officers.

94.   The removal or loss of the video data or failure to take it when regulations required that was intentional spoliation of evidence.

95.   Other units arriving after Alan Jeffries was on the ground made video recordings of the incident.

96.   Waters wrote on his incident report there is no digital video recording of this incident.

97.   This entry was false.

98.   By writing this Waters was concealing evidence, contrary to law and regulations.

99.   SPD leaders since installation of the in car video cameras have known or recklessly have disregarded that SPD officers who are supposed to take video of encounters with citizens often

COMPLAINT - 13

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

1  or routinely either fail to take the video or fail to note the existence of video on most arrest reports

2  dealing with obstruction arrests and SPD has concealed form the public many of its video related

3  records including activity logs, back up systems, existence of other copies of video and the like; and

4  SPD has failed to properly discipline officers for misuse of video system and records, to allow and

5  permit office misconduct contrary to the stated purpose of using video to help assure office

6  integrity.

## LEGAL CLAIMS

7

8      100.    Each section on each legal claim below incorporates all other allegations of this

9  complaint.

### Assault and Battery

10

11      101.    Waters assaulted and committed battery against Alan and Bennie Jeffries in

12  intentionally creating in them the apprehension of imminent or harmful offensive contact, then

13  intentionally inflicting harmful or offensive contact with the persons of Alan Jeffries and Bennie

14  Jeffries.

15      102.    Said assault and battery caused injury to Alan Jeffries including economic loss,

16  emotional distress, insult, humiliation and indignity; Waters intentionally put Bennie Jeffries'

17  life at risk by depriving him of his medical supplies; and Michael Waters is liable to Jeffries for

18  all such injury and loss.

19      103.    Said assault and battery caused injury to Bennie Jeffries including economic loss,

20  emotional distress, insult, humiliation and indignity and Michael Waters put Bennie Jeffries' life

21  at risk without his medical supplies; and Michael Waters is liable to Bennie Jeffries for all such

22  injury and loss.

23

COMPLAINT - 14

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

104.    The City of Seattle is vicariously liable to Alan Jeffries and Bennie Jeffries for assault and battery because at all relevant times the City employed Waters who was acting in furtherance of City business and within the scope of employment when the said tortious acts occurred.

**False Arrest**

105.    Waters is liable for false arrest to Alan Jeffries and Bennie Jeffries.

106.    When Waters turned his car around and gave orders and made a show of force, that was an arrest of both Alan and Bennie Jeffries.

107.    There was a continuing seizure and arrest until Alan was released that night at the holding cell, and until Bennie was let go some 1.5 hours later.

108.    As to Bennie, the seizure constructively continued until the time he recovered his access to an air tank and nebulizer.

109.    All such seizure stops and arrest lacked proper legal basis; there was no probable cause to believe a crime had been committed nor any reasonable suspicion warranting a stop; there were no facts Waters or the arresting officer knew or reasonably believed sufficient to warrant a person of reasonable caution in a belief that an offense had been committed; there were no facts suggesting any bank robber was present, nor that any other crime or infraction had been committed; not that Alan Jeffries committed the crime of obstruction.

110.    Alan Jeffries did not hinder, delay or obstruct the officer; Waters was not in the midst of official duties; Alan Jeffries knew Waters was not discharging a public duty but was on a personal vendetta; and Jeffries complied with Waters' orders to the extent he could.

111.    Waters intentionally falsely arrested Alan and Bennie Jeffries to hassle them due to malice, and because Alan spoke back, and due to their race.

COMPLAINT - 15

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

112.    The false arrests caused and proximately caused Alan and Bennie Jeffries to suffer insult, indignity, humiliation, embarrassment and emotional distress; economic loss; physical injury; pain and suffering; and they are entitled to recover from Waters for all such losses and injuries in an amount to be shown at trial.

113.    The City of Seattle is vicariously liable to Alan and Bennie Jeffries for false arrest because at all relevant times the City employed Waters who was acting in furtherance of City business and within the scope of employment when the said tortious acts occurred.

**Malicious Prosecution**

114.    Waters is liable to Alan Jeffries for malicious prosecution of Alan Jeffries.

115.    Waters and the City of Seattle prosecutors caused criminal proceedings to be initiated or continued against Alan Jeffries; without probable cause; with malice; and the proceeding terminated in favor of Alan Jeffries, or was abandoned; and the prosecution caused Alan Jeffries to suffer injury or damages.

116.    Water's malice to Jeffries and that of the City included malice, ill will, spite or vindictiveness, wrongful motives or reckless disregard of the rights of Alan Jeffries.

117.    Alan Jeffries is entitled to recover from Waters all such damages, including general damages, economic loss and mental and emotional distress.

118.    The City of Seattle is vicariously liable to Alan Jeffries for malicious prosecution, by Waters and by the city prosecutors, because at all relevant times the City employed Waters and prosecutors who were acting in furtherance of City business and within the scope of employment when the said tortious acts occurred.

**Intentional Infliction of Emotional Distress**

COMPLAINT - 16

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

119.    Alan and Bennie Jeffries may recover against Michael Waters for the tort of intentional infliction of emotional distress.

120.    Michael Waters engaged in extreme and outrageous conduct in claiming Alan Jeffries was a bank robber when in fact Waters knew and had spoken with Alan Jeffries no less than twenty times previously and never had identified him as a bank robber when reviewing the bank robber photos in morning briefings and not telling prosecutors this or his past relationship with Jeffries and not indicating same on the incident report; and in making false statements on the incident report including that there was no video; in failing to take or keep video of his stop and interaction with Alan Jeffries; in rousting Alan Jeffries due to personal jealousy and pettiness, racial motives, and because Alan spoke up to protest; Waters also acted with extreme and outrageous conduct in disregarding the medical condition of Bennie Jeffries and depriving him of his van, air tank and nebulizer and endangering his life and stopping him without cause even after there was no pretense he was a suspected bank robber; in tasing Water's acquaintance, Alan Jeffries whom he knew personally and knew presented no threat; in failing to retain or destroying video of this encounter; falsely stating there was no video; and said extreme and outrageous abuse of the SPD uniform for personal ill will reasons was intended to cause, and did cause, severe emotional distress.

121.    The City of Seattle is vicariously liable to Alan and Bennie Jeffries for intentional infliction of emotional distress, because at all relevant times the City employed Waters who was acting in furtherance of City business and within the scope of employment when the said tortious acts occurred.

**Federal Civil Rights Claims**

COMPLAINT - 17

122.    42 USC §1983 provides that one may recover from any person or entity acting under color of state law who causes damages through violations of rights under the constitution and federal laws.

123.    At all relevant times, Waters acted under color of law; he was in uniform.

124.    Waters violated Alan Jeffries' rights under the US First Amendment by arresting him for obstruction in retaliation for Alan Jeffries protesting the seizure and talking back to Waters.

125.    Waters violated Alan Jeffries First Amendment rights by exercising his state authority for personal motives, and in response to perceived slights to his dignity including Alan Jeffries' criticism and challenges directed against Waters.

126.    Waters violated the Fourth Amendment rights of Alan and Bennie Jeffries, through unlawful stop, seizure, search, and illegal assault and battery, and false arrest without proper legal basis or probable cause.

127.    Waters also violated the Fourth Amendment rights, through excessive force against Alan and Bennie Jeffries including more force than was objectively reasonable under the circumstances.

128.    Waters violated Fourteenth Amendment due process rights and Sixth amendment rights (confrontation of witnesses clause) of Alan and Bennie Jeffries by failing to retain video or losing or concealing it or making false statements on the incident report.

129.    As a result of these violations, Alan Jeffries and Bennie Jeffries suffered damages, injury and loss, and Michael Waters is liable to them in an amount to be proven at trial.

130.    The acts of Waters were malicious, oppressive or reckless disregard of Alan or Bennie Jeffries rights, and Waters is liable for punitive damages to them, too.

COMPLAINT - 18

**CLEVELAND STOCKMEYER PLLC**
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

131.    The city of Seattle is liable under 42 USC § 1983 as to any compensatory or attorney fee liability of Waters under § 1983.

132.    The violations of rights were caused by SPD policy or custom in which SPD leaders claimed to install in car video to assure officer integrity; and told the public that in car video would be installed to assure officer integrity and prevent officer misconduct; but then SPD leaders knew or recklessly disregarded the facts that often officers in encounters with citizens did not take video and in making obstruction arrests and filling out obstruction arrest reports in 2008 and 2009 failed to take video or failed to note the existence of video on arrest reports and then SPD leaders failed to properly discipline or punish said officers who violated video regulations.

133.    In the years prior to 2009, few, if any officers were disciplined or reported for failing to follow video regulations though many violated said regulations.

134.    This taught officers the real policy and custom was to allow them to commit abuses by allowing them to not video encounters with citizens.

135.    SPD leaders in 2008 and 2009 also knew the official policy of SPD via OPA findings was that officers could arrest persons for failure to give identification, when this was contrary to law; that the officer training was minimal or defective; and that SPD officers often used excessive force or misused the obstruction arrest power particularly when dealing with racial minorities.

136.    This policy and custom of allowing officers to misuse their power with impunity told Waters he could, too; no one would punish him for not getting the encounter with the Jeffries on video, or for falsely stating that there was no video of this incident, or falsely failing to state he personally knew them.

COMPLAINT - 19

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA 98103
(206) 419-4385

137.    Since August 22, 2009, no one has punished or disciplined Waters for not retaining video, or not noting the existence of video on his arrest report.

138.    This is in conformity with the policy and custom of allowing officer misconduct and allowing misuse of the video system and regulations to hide same.

### PRAYER FOR RELIEF

WHEREFORE plaintiffs Alan Jeffries and Bennie Jeffries pray for an order and judgment:

1.    Declaring that Michael Waters engaged in unlawful violations of the First, Fourth, and Sixth and Fourteenth Amendments, and assault and battery, false statements in his report, concealment of evidence, violations of video regulations, malicious prosecution, intentional infliction of emotional distress, and violation of 42 USC § 1983;

2.    Enjoining Michael Waters from approaching Alan or Bennie Jeffries or entering Chelan's Café;

3.    Enjoining SPD to discipline any officer who without reasonable cause does not record and retain video of encounters with citizens; and to follow up and take such action whenever an incident report does not note there was video;

4.    Awarding an amount for compensatory damages in favor of Alan and Bennie Jeffries and against Michael Waters and the City of Seattle in an amount to be determined at trial, together with attorneys fees and costs as allowed by law;

5.    Awarding punitive damages against Michael Waters and in favor of Alan Jeffries and Bennie Jeffries, together with attorneys fees and costs as allowed by law; and

6.    Awarding such other and further relief as may be just and equitable.

DATED this ___ day of August, 2011.

COMPLAINT - 20

CLEVELAND STOCKMEYER PLLC
8056 Sunnyside Ave. N.
Seattle WA  98103
(206) 419-4385

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

CLEVELAND STOCKMEYER PLLC

By: _Cleveland Stock_

    Cleveland Stockmeyer WSBA #21636

8056 Sunnyside Ave. N.
Seattle, WA  98103
(206) 419-4385
cleve@clevelandstockmeyer.com
Attorneys for Plaintiffs

COMPLAINT - 21

EXHIBIT 2

FILED

11 AUG 08 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-27089-1 KNT

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| Jeffries | NO.  11-2-27089-1    KNT |
| | Order Setting Civil Case Schedule (*ORSCS) |
| Plaintiff(s) | |
| vs | |
| Waters, et al. | ASSIGNED JUDGE  Saint Clair          17 |
| | FILE DATE:                  08/08/2011 |
| Defendant(s) | **TRIAL DATE:**            **01/28/2013** |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (Schedule)** on the Defendant(s) along with the **Summons and Complaint/Petition**. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion. The **Schedule** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

***"I understand that I am required to give a copy of these documents to all parties in this case."***

_____ | _____

Print Name                                        Sign Name

Order Setting Civil Case Schedule (*ORSCS)                                    REV. 12/08      1

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] --
especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for
attorneys and parties to pursue their cases vigorously from the day the case is filed. For example,
discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties,
claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery
cutoff date [*See KCLCR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$230** must be paid when any answer that includes additional claims is filed in an existing
case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the
deadline in the schedule.  The court will review the confirmation of joinder document to determine if a
hearing is required.  If a Show Cause order is issued, all parties cited in the order must appear before
their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior
Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this
*Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the
parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any
pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a
*Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a
final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice
of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to
present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of
Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office,
parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to
mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and
cross-claims have been filed.  If mandatory arbitration is required after the deadline, parties must obtain
an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must
pay a $220 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of
$250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court
Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

Order Setting Civil Case Schedule (*ORSCS)                    REV. 12/08    2

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Mon 08/08/2011 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$220 arbitration fee must be paid** | Tue 01/17/2012 | * |
| DEADLINE to file Confirmation of Joinder if not subject to Arbitration. [*See KCLCR 4.2(a) and Notices on Page 2*]. | Tue 01/17/2012 | * |
| DEADLINE for Hearing Motions to Change Case Assignment Area. [See *KCLCR 82(e)*] | Mon 01/30/2012 | |
| DEADLINE for Disclosure of Possible Primary Witnesses [*See KCLCR 26(b)*]. | Mon 08/27/2012 | |
| DEADLINE for Disclosure of Possible Additional Witnesses [*See KCLCR 26(b)*]. | Mon 10/08/2012 | |
| DEADLINE for Jury Demand [*See KCLCR 38(b)(2)*]. | Mon 10/22/2012 | * |
| DEADLINE for Setting Motion for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | Mon 10/22/2012 | * |
| DEADLINE for Discovery Cutoff [*See KCLCR 37(g)*]. | Mon 12/10/2012 | |
| DEADLINE for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | Mon 12/31/2012 | |
| DEADLINE for Exchange Witness & Exhibit Lists & Documentary Exhibits [*See KCLCR 4(j)*]. | Mon 01/07/2013 | |
| DEADLINE to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(2)*] | Mon 01/07/2013 | * |
| DEADLINE for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | Mon 01/14/2013 | |
| Joint Statement of Evidence [*See KCLCR (4)(k)*]. | Tue 01/22/2013 | * |
| DEADLINE for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file Proposed Findings of Fact and Conclusions of Law with the Clerk) | Tue 01/22/2013 | * |
| Trial Date [*See KCLCR 40*]. | Mon 01/28/2013 | |

### III. ORDER

Pursuant to King County Local Civil Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Civil Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED:   08/08/2011

*Richard F. McDermott*

**PRESIDING JUDGE**

**IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE**

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule.  The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

**CASE SCHEDULE AND REQUIREMENTS**
Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

**A. Joint Confirmation regarding Trial Readiness Report:**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

The form is available at http://www.kingcounty.gov/courts/superiorcourt.aspx .  If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand.  Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held.  FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

**C. Trial:**  Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court.  The Friday before trial, the parties should access the King County Superior Cour website http://www.kingcounty.gov/courts/superiorcourt.aspx  to confirm trial judge assignment.  Information can also be obtained by calling (206) 205-5984.

**MOTIONS PROCEDURES**

**A. Noting of Motions**

**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge.  The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules.  Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Nondispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered.  All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements.  Rather than noting a time of day, the Note for Motion should state "Without Oral Argument."  Local Civil Rule 7 governs these motions, which include discovery motions.  The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge.  All other motions should be noted and heard on the Family Law Motions calendar.  Local Civil Rule 7 and King County Family Law Local Rules govern these procedures.  The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:**   Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time.  However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

## B. Original Documents/Working Copies/ Filing of Documents

**All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.  The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents.** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application.  The filer must still serve any others who are entitled to service but who have not opted in.  E-Service generates a record of service document that can be e-filed.  Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  Do not file the original of the proposed order with the Clerk of the Court.   Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge.  If that judge is absent, contact the assigned court for further instructions.  If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department.**  Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department.  **If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.**

**C.   Form**

Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing.  Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

*Richard F. McDermott*

_____

**PRESIDING JUDGE**

EXHIBIT 3

FILED

11 AUG 08 PM 1:15

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 11-2-27089-1 KNT

SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| Jeffries | NO.  11-2-27089-1 KNT |
| VS | |
| Waters, et al. | CASE INFORMATION COVER SHEET AND AREA DESIGNATION |

CAUSE OF ACTION

**(TTO) -**     TORT, NON-MOTOR VEHICLE

AREA DESIGNATION

**KENT -**     Defined as all King County south of Interstate 90 except those
areas included in the Seattle Case Assignment Area.

EXHIBIT 4

The Honorable J. Wesley Saint Clair

1

2

3

4

5

6            IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                             FOR KING COUNTY

7
                                          )
8   ALAN H. JEFFRIES, a single person, and )
    BENNIE JEFFRIES IV, a single person,   )
9                                          )  No.     11-2-27089-1KNT
                              Plaintiffs,  )
10                                         )    NOTICE OF APPEARANCE
                   vs.                     )
11                                         )
    MICHAEL WATERS, an individual, and     )  [Clerk's Action Required]
12  MICHAEL WATERS and JANE DOE            )
    WATERS, a marital community; and the CITY )
13  OF SEATTLE, a Washington municipal     )
    corporation,                           )
14                                         )
                              Defendants.  )
15  _____ )

16  TO:     Clerk of the above-entitled court; and

17  TO:     Plaintiffs above-named, and their counsel, Cleveland Stockmeyer:

18          PLEASE NOTE that defendants, City of Seattle, Officer Michael Waters and Officer

19  Michael Waters and Jane Doe Waters, a marital community, by and through their undersigned

20  attorney, and without waiving any objections as to improper service, process, jurisdiction, venue, or

21  any other CR 12 insufficiencies, enters their appearance in this action and requests that all future

22  papers and pleadings in this matter, except original process, be served on this attorney at the address

23  stated below.

NOTICE OF APPEARANCE - 1

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

Please make note that the Seattle City Attorney's Office **mailing address** is:

PO Box 94769
Seattle, WA  98124-4769

and the **street/hand-delivery/messenger address** is:

600 Fourth Ave., 4th Floor
Seattle, WA  98104

The post office advises that any **mail** delivered via the United States Postal Service having an address other than the above-referenced PO Box will be returned to the sender.

DATED this 23rd day of August 2011.

PETER S. HOLMES
Seattle City Attorney

By:      s\ Brian G. Maxey
Assistant City Attorney
State Bar Number 33279
Telephone: (206) 733-9001
E-mail: brian.maxey@seattle.gov

By:       s\ Dominique L. Jinhong
Assistant City Attorney
State Bar Number 28293
Telephone: (206) 684-8251
E-mail: dominique.jinhong@seattle.gov

600 Fourth Avenue, 4th Floor
PO Box 94769
Seattle, WA  98124-4769
Fax: (206) 684-8284

Attorneys for Defendants
City of Seattle
Officer Michael Waters
Officer Michael Waters and Jane Doe Waters

NOTICE OF APPEARANCE - 2

**PETER S. HOLMES**
Seattle City Attorney
600 Fourth Avenue, 4th Floor
P.O. Box 94769
Seattle, WA 98124-4769
(206) 684-8200

EXHIBIT 5



All Documents | Viewable

| | Case Number: | 11-2-27089-1 | Case Title: | JEFFRIES ET ANO VS WATERS ET ANO | Filter By: | - All - |

| Select | Sub #▲ | Pages | Date | Description |
|--------|--------|-------|------|-------------|
| ☐ | 1 | 23 | 08/08/2011 | COMPLAINT |
| ✔ | 2 | 6 | 08/08/2011 | SET CASE SCHEDULE |
| ✔ | 3 | 1 | 08/08/2011 | CASE INFORMATION COVER SHEET |
| ☐ | 4 | 2 | 08/23/2011 | NOTICE OF APPEARANCE /DEFS |

Get Document(s)